US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

APR 1 8 2012

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

# IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF ARKANSAS

Curtis J Neeley Jr., MFA                    **Plaintiff**

**v**

CASE NO. 12-5074

NameMedia Inc,
Google Inc,
Microsoft Corporation,                      **Defendants**
Federal Communications Commission,
The United States.

## COMPLAINT FOR LIBELOUS INVASIONS OF PRIVACY, AUTHOR'S RIGHTS VIOLATIONS, FRAUDULENT USE OF STOLEN ART, AND FAILURE TO REGULATE WIRE COMMUNICATIONS OR PROTECT EXCLUSIVE RIGHTS FOR AUTHORS

Comes Plaintiff, Curtis J Neeley Jr., MFA, and respectfully states as described in this complicated complaint including repeated exclusive author rights violations, defamations of an author by libel, and numerous invasions of the privacy of an author using internet wire and radio communications to present the author in a false negative light by creating the appearance Neeley desired minors to see Neeley's original creations of nude art using "curtis neeley" in image searches despite repeated advisements this was not desired.

1

Neeley's pre-teen daughter was exposed to Neeley's original photographs of the naked female figure against the known desires of Neeley. Useful nude visual art was shown on [sic] "the Internet" against Neeley's known desires in violation of privacy and in libelous violation of exclusive author rights. Courts call "the Internet" a "*wholly new medium*" in plain error due rapid cultural change. Internet wire communications are thereby exempted moderate regulation violating the intentions of the Communications Act of 1934 and the plain rule of common law.

# I.  NameMedia Inc Artwork Thefts and Libelous Violations of Exclusive Authors Rights While Invading Privacy in 2009

1.      Neeley created a user profile at <photo.net> in 2004 and uploaded images of five nude exhibition photographs and one documentary image of Neeley producing nude art from a wheelchair to obtain adult site member feedback. Defendant NameMedia Inc purchased <photo.net> in 2007 and stopped allowing users of <photo.net> to delete submitted art and began claiming perpetual licensure of all user submitted content without sufficient notice and without written agreement for waiver of visual artists rights and without Neeley's  acknowledgement or agreement to this claim. Neeley became aware of the new policy in 2009. This policy change was underhanded.

2

2.      On a <photo.net> forum post on July 12, 2009, Neeley posted that the new site owners would face him in Court and Neeley wished for <photo.net> to delete Neeley's nude art. On about July 24, 2009, Defendant NameMedia Inc prevented Neeley's access to <photo.net> maliciously and prevented deletion of Neeley's nude art as was theft and an unauthorized usage invading privacy and selling ads. Defendant NameMedia Inc fraudulently alleged Neeley's authorization in writing, in a felonious computer fraud that was defamation by libel.

3.      The 2009 "Digital Millennium Copy[rite] Act" (DMCA) agent for Defendant NameMedia Inc, Hannah Thiem, was notified of the unauthorized use with an IP beacon for confirming notice delivery as well as using MySpace and Flickr social websites trying to defend the exclusive rights to useful creations by Neeley.

4.      Neeley demanded the nude art be removed because the "*stolen*" art presented nude female figures and continued unauthorized display to minors violated rights to exclusive control of creations alleged to be recognized in Article 1, §8, Claus 8 of the Constitution for authors and presented Neeley in a negative false light.    Nude art authored by Neeley began being displayed to minors by <photo.net> conspiring with Defendant Google Inc. Neeley's minor daughter was distressed by seeing these nudes while in school. This caused an outrageous "wire communication" (email) on December 26, 2008 and caused Neeley to realize the fraudulent new policy of <photo.net> and Neeley begun attempting to remove these nude images.

5.      Curtis J Neeley Jr., MFA believes no minor, no practicing Muslim, and no anonymous viewer who rejects responsibility for viewing nudes should be exposed to Neeley's nude art.    Neeley realized Defendant NameMedia Inc and Defendant Google Inc operated the image search on <photo.net> attributing nude photographs to Neeley by name and displaying these to minors or any anonymous visitor while alleging plaintiff's specific permission in writing[1]. Each Defendant presented Neeley maliciously in the negative false-light of doing nude photography and allowing presentation of this nude art to minors or any anonymous viewer without parental concern and lacking the moral values common to decent humans.

6.      This fraud was libelous causing of  shame and was invasion of privacy and violated Neeley's exclusive right to control creations for a limited time.

7.      Attribution and display of this nude art continued after the DMCA agent, Hannah Thiem, viewed the notice and NameMedia Inc and conspirator Defendant Google Inc chose to ignore repeated notifications and the months to years of ineffectual federal litigation culminating in this complaint.

8.      In January 2010, Neeley discovered a new DMCA agent listed for Defendant NameMedia Inc and repeated the monitored notification to get the images deleted and enforce Neeley's exclusive rights because the federal litigation, begun in 2009, was proving ineffective. A notice regarding nude art being displayed against Neeley's known wishes caused the vociferous relays of January 23, 2010.

---

[1] Every 'figurenude' displayed to minors against Neeley's known desires by NameMedia Inc alleged as follows.
"© 1996-2009 NameMedia, Inc. and contributors. Contributed content used with permission." ··· This claim was libelous and a felonious computer fraud. See A.C.A. § 5-41-103

4

9.    Neeley's nude art remained displayed to minors alleging <u>specific permission</u> as was fraudulent and libelous of NameMedia Inc until Defendant NameMedia Inc deleted the nude photos around <u>January 24, 2010</u> and ceased attributing Neeley with inappropriate nude art before minors as was demanded of both Defendant NameMedia Inc and Defendant Google Inc numerous times in federal court with no results whatsoever. This **<u>overnight</u>** deletion demonstrated how immediate deletion should have been when first advised of these unauthorized uses.

10.    Defendant NameMedia Inc alleged this deletion was done to avoid continued harassment and privacy violations of Robb Rossel during federal discovery. Robb Rossel was the NameMedia Inc DMCA agent given the vociferous notices of paragraph 8 on <u>January 23, 2010</u> causing **<u>overnight</u>** deletion of the nude photos around <u>January 24, 2010.</u>

## II.    Google Inc 2007-2010 Defamations

1.    Defendant Google Inc attributed Neeley's 'figurenude' images from <photo.net> *correctly* and violated exclusive author rights and violated privacy required for honorable creation of art that is inappropriate for minors by parents as was authorized for congressional protection in 1787 by the United States Constitution[2] in Article I, §8, Clause 8 in order to promote the <u>progress and disclosure</u> of useful art.

---

[2] "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." – Promotion requires disclosure and disclosure in Neeley's case requires some control of the audience ages and venue that is used for the disclosure and this right has never been even marginally protected in the United States and therefore the United States is a named defendant sought for declaratory relief.

5

2.     NameMedia Inc and Google Inc conspired to display six stolen photographs of the naked female to minors or the anonymous and violate exclusive rights of Neeley that are supported by the "Berne Convention for the Protection of Literary and Artistic Works" accepted among hundreds of nations. These individual rights are not protected by Congress despite authority to protect these RIGHTS for a limited time since 1787 and by the United States' pretending to accept the "Berne Convention for the Protection of Literary and Artistic Works" (Berne) in 1988. Full compliance with "Berne" was asserted by Congress again in 1994 and was ruled permissible in *Golan v Holder*, (10-545) despite the self-serving *amicus* opposing full "Berne" compliance by Defendant Google Inc.

3.     Defendant Google Inc attributed Neeley to original nude art by image searches using Neeley's personal name from various websites like <photo.net>[3]. Neeley disclosed nude art creation by an author's exclusive choice to adults at <photo.net> and Google Inc attributed Neeley correctly to these images and various other nude images never placed on personal websites or BLOGs but displayed by numerous other persons due to the world-wide appreciation of the nude photography authored by Neeley since 1991 and shown to responsible adults since internet wire communications first existed and when images were first shown on [sic] "the Internet"[4].

---

[3] NameMedia Inc purchased <photo.net> in 2007 and began allowing the anonymous public and Google Inc to view images marked as suitable only for adults in order to increase ad viewership without allowing Neeley to remove nude art or giving adequate notice of this policy alteration.

[4] The Internet Archive "WayBack machine", launched in 2000, is the earliest archive of internet wire communications revealing use of [sic] "the Internet" by Neeley in 1997 displaying nudity to adults since before search engines including those of each defendant existed with image searches and when, in fact, "search engines" did not exist at all.

6

4.    Google Inc allowed anonymous viewership of nude content authored by Neeley to support profitable defamation and violation of Fourth Amendment rights to be secure against personal searches and the right to be secure in the person for maintaining privacy and respectful reputation.

5.    Microsoft Corporation and IAC/InterActiveCorp ceased returning nudes in image searches of Neeley's name **immediately** when made aware this disturbed Neeley in 2009 and 2010. Microsoft Corporation resumed display of nudes in 2011 while conspiring to reinforce the falsehoods told by Google Inc counselors in District Court. Microsoft Corporation stopped again on March 8, 2012 and then resumed on April 5, 20012 **immediately** in order to demonstrate the fact that responses are called automated to deceive by search engines. "M*ysterious search robots*" are nothing but trivial snippets of software executing precise content **copying instructions of humans**.   "Searches" are not mechanical and uses of the terms "*robot*", "*bot*", or "*automatic*" are wildly successful deceptions.

## III.    The Google Inc Books 2010 Defamation

1.    **After March 7, 2010**, Google Inc books attributed Neeley correctly to three more original 'figurenude' art photographs before anonymous users including minors and Muslims after Google Inc scanned these three nude images from a New York library book as was offensive and shamed Neeley and was a libelous invasion of privacy and violation of the exclusive author's rights not enforced in the United States though recognized in 1787 and authorized for protection by Congress. Scanning visual art from this book and digital republication of this visual art before minors presented Neeley in a negative false light. Congress agreed this was forbidden by Treaty in 1988 and again in 1994. Unwavering Berne compliance was ruled constitutional January 18, 2012 in *Golan v Holder*, (10-545).

2.     Courts have ruled publication of books online requires new authorizations and the Google Inc "fair-use" claim that will follow is frivolous and was rejected in numerous United States Courts.   "Fair-use" exceptions to exclusive rights of authors are often unconstitutionally vague and impossible to understand and violate the accepted international Treaty of "Berne Convention for the Protection of Literary and Artistic Works" despite the *Golan v Holder*, (10-545) ruling.

## IV.   Google Inc 2009-Current Defamations

1.     Google Inc attributed and attributes Neeley recklessly to useful original 'figurenude' art photographs before anonymous users including minors and Muslims after made aware in United States Court that these manners of attribution were improper.

2.     Neeley contacted numerous parties including British. Russian, French, Norwegian, and Portuguese "fans" of Neeley's useful nude art in each country's native tongue seeking to halt the nude results in searches for "curtis neeley" in image searches "automatically" since advising counselors and federal litigation was unsuccessful until March 8, 2012.

3.     The Russian website <artnude,pp.ru> and the Norwegian website <nudeartcollection.com> no longer exist.   These deletions removed thousands of nude images from computers that were the apparatus on one end of medium independent internet wire-radio communications which are not new mediums.

8

4.     Google Inc stopped returning art by Neeley in searches for "*curtis neeley site:nudeartcollection.com*" when advised the website no longer showed nude art by Neeley yet continued returning other nudes from this site demonstrating search processes not being entirely automatic as claimed in Federal Court in 2010 before Magistrate Judge Erin L Setser as was fraudulent. The nude art resumed being returned in this search after the Eighth Circuit affirmation.

5.     Neeley removed numerous 'figurenude' art photos from <fineartamerica.com> after the site owners would not exclude Google Inc "automatic" image harvesters due the *de facto* monopoly of <google.com> on traffic in a *de facto* violation of First Amendment protected free speech.

6.     The   French   language   website   of <zola1861.free.fr> removed Neeley's personal name from the attribution to the collected useful nude art. Although the text "curtis neeley" is no longer anywhere on the page, Google Inc alleges this page to still cause nude image results in "*curtis neeley*" searches. These nudes return despite repeated notifications to Google Inc thereby resulting in malicious or reckless failures of Defendant Google Inc to act after vociferous advisements.

7.     Two Portuguese fans and site users of <weblog.com.pt> stopped using the useful 'figurenude' art of Neeley on their BLOGs but failed to delete the image from the server expeditiously after contacted in Portuguese by Neeley.   The collected nude is not allowed to be called by any other server yet Google Inc refuses to stop returning this nude image after advised often and after federal action was unsuccessful in a **error of law invalidating 17 USC §106A**.

9

8,    Neeley once did erotic photography that was published in 2002 at <Michelle7-erotica.com> by choice. Despite years in federal court and reattribution of the nude images to "CN Foundation" by the website owner to remove Neeley's personal name from the pages alleged to be the source, "*curtis neeley site:michelle7-erotica.com*" still returns one nude image by Neeley violating rights to privacy and rights to exclusively control disclosure of useful art for a limited time.

9.    Google Inc counselor alleged in open court before Magistrate Judge Erin L. Setser the following fraud that is uninformed at best.

> "*...We, of course, then make our own broad cuts on things that we don't permit, like child pornography and things like that. But Mr. Neeley's decision to place his photographs in the public domain was Mr. Neeley's decision alone. He has complete control over the ability to remove them from the public domain, should he used to want to remove them...*"[5]

10.    The results of the search for "*curtis neeley site:saatchionline.com*" resulted in one figurenude done by Neeley that violated the author's exclusive right to choose disclosure to minors that remains unprotected in the United States despite no nudes on the page Google Inc alleges to be the third party source.

---

[5] Copied from the transcript filed by RICK L. CONGDON, RMR, FCRR, Federal Official Court Reporter, PROCEEDINGS OF DECEMBER 6, 2010

10

11.    The "search engine" <listphotographers.com> is alleged by Google Inc to still be the third party source for the two nudes displayed in *"curtis neeley site:listphotographers.com"* searches. This continued on March 31, 2012 despite Neeley advising the "search engine" owner and the domain name's registrar to remove these December 5, 2011 and the subsequent owner or domain name registrar deleted all Neeley's nudes in 2011. Google Inc is malicious or reckless by ignoring this having been copied.

12.    The fraudulent and inaccurate Google Inc contention above from open court that Neeley placed 'figurenude' photography in the "public domain" and could remove these nudes at will highlights the fact the Google Inc Counselors have no idea whatsoever about the definition of "public domain" yet use this term in open court carelessly or intending to mislead the Court, as is hoped not to be the case. Google Inc was advised by the Supreme Court in *Golan v Holder* of erroneous legal use of the term "public domain".

13.    The Wikipedia Foundation maintains an online user editable encyclopedia where useful 'figurenude' images were donated by Neeley. These then returned in searches for "curtis neeley" in Google Inc image searches before reattributed to "CN Foundation" in order to prevent Google Inc returning these nudes before some minors searching for their father's name in Google Inc image searches while at school.

14.    The French figure photography fan BLOG of <corpscircuits.canalblog.com> caused searches of "curtis neeley site:corpscircuits.canalblog.com" to return nudes despite removal of these images from the website by Neeley's request until around March 21, 2012 despite numerous advisements to Google Inc.

11

15.    <Wikipedia.org> was called "*like a BLOG*" by Google Inc counselors further illustrating how unfamiliar the counselors for Google Inc are with internet wire communications in general[6] as was unrealized during prior jurisprudence.

16.    Google Inc continues to return 'figurenude' images by Neeley from searches of the website <diviantart.com> despite users of the website being required to be registered to <diviantart.com> and logging in like was originally done at <photo.net> to see these until the stealth revision at an unknown time between   2007-2008 by Defendant NameMedia Inc. Google Inc was advised in federal court and by vociferous advisements to counselors to cease returning these nudes.  "[C]*urtis neeley site:deviantart.com*" recklessly returned three of the seven otherwise filtered 'figurenudes' to searching minors for months but now only two. Google Inc now fails to advise Neeley of how to cause this violation to "automatically" cease despite vociferous requests to Defendant Google Inc counselors.

17.    Defendant Google Inc once returned eighteen notable 'figurenude' images on August 28, 2011 in the results of "*curtis neeley site:redbubble.com*" searches and Neeley advised Google Inc Counselors repeatedly as well as advising <redbubble.com> that Google Inc bypassed their adult filtration like Google Inc continues to do at <diviantart.com>.

---

[6] The lead counselor for Defendant Google Inc is presumed to be very familiar with language about [sic] "the Internet". Being utterly unaware of the meaning of "public domain" or "like a blog" is unacceptable when given disproportionate weight by the judge(s) during jurisprudence.

12

18.     Neeley added numerous other found-scene images to <redbubble.com> but did not remove a single nude image. Neeley is unable to determine why these searches stopped bypassing filtration of otherwise filtered nudes in *<curtis neeley site:redbubble.com>* searches on December 29, 2011. These searches stopped bypassing filtration but continued bypassing filtration at <deviantart.com>.

19.     Neeley discovered searches for *<curtis neeley site:google.com>* returned twenty of Neeley's early inappropriate nude art that was collected by Russian user, Darya Anokhina, in a Google Inc Picasa album from 2002. Darya Anokhina had collected scores of nude photographs from other noted artists of the nude like Helmut Newton but removed the collected nudes of Neeley after asked in English and Russian but continued collecting photography of nudes by other artists.  Google Inc continued returning these early nudes and ignored these removals being made though advised once again.

20     The efforts to exclusively control authorship of nude photography is not supported by United States laws though authorized to be done in the Constitution in 1787. The attempts by Neeley to exclusively control authorship can be seen in paragraphs (1-8, 10-19) and these attempts to exclusively control authorship are despite the fraudulent statements of Google Inc counselors seen in paragraph 9.


## V.     Microsoft Corporation Defamations

1.     Microsoft Corporation initially returned one nude in searches for "curtis neeley" in 2009 but then ceased returning nude images in these searches from late in 2009-2011 when [sic] "the Internet" was exempted moral rights protection contrary to federal statute and international Treaty (*Berne Convention*).

2.    Microsoft    Corporation    began    returning nudes by Neeley as well as scores of nudes not done by Neeley to further violate privacy by conspiring with Google Inc to deceive courts to believe search results are "automatic" despite metadata[7] available in every image file visible by wire or radio communications today and the fact that all search [sic] "*bots*" follow specific human instructions without fail and are not operations of a machine by the wildest stretch of the imagination. Meta-data is ignored recklessly by all search engines to increase profit and allow absolute free speech.

3.    Microsoft    Corporation    **stopped**    returning Neeley's nude art in returns for searches of "curtis neeley" immediately on March 8, 2012 after vociferous advisement to Microsoft Corporation counselors but resumed returning Neeley's nude art in searches for "curtis neeley" on April 5, 2012. Microsoft Corporation perhaps did this to support the fraudulent District Court claim of Google Inc counselor quoted in the previous section that searches are somehow automatic and that the whole of the network of interconnected devices called the Internet are all part of the "public domain". Ironically, Defendant Google Inc has now asserted that author's rights are too individual for use in class-action complaints in the Southern District of New York in *Authors Guild et al v Google Inc.*

---

[7] *"Metadata"* is a general term for image data in simple text formats describing the information that will be disclosed by the file's image data like "rating" or authorship info that are easily accessed by text searches.

14

## VI.   Federal   Communications   Commission Malfeasance

1.    The  display  of  nudity  to  minors  and  the anonymous  by  Defendant  Google  Inc  and  Microsoft Corporation  is  supported  by  the  FCC  refusing  to perform  the  statutory  mission  for  protecting  the  safety of  the  public  on  world-wide  wire  communications.  The *Pacifica*[8]  ruling  from  1978  was  substituted  wholly  for the  47  USC  §151  statutory  rational  in  error  of  law.

2.    The  FCC  regulated  wire  communications  when wires  were  the  only  way  for  instant  communication across  the  ocean.  Internet  wire  communications, described  precisely  in  the  Communications  Act  of  1934 in  47  USC  §153,  became  the  worldwide  apparatus connected  to  either  end  of  wires.  §153  was  not  realized in  *ACLU v Reno*[9]  in  the  **"landmark"  mistake  of  1996** that  caused  "the  Internet"  to  develop  into  the  Earth's wire  and  radio  venue  for  unregulated  communication despite  the  rest  of  the  ignored  text  in  47  USC  §151.

---

[8] *FCC v Pacifica* The "landmark" First amendment holding from 1978 with the "*pervasiveness theory*," held that broadcast speech was "*uniquely pervasive*" and an "*intruder*" in the home, and therefore demanded special, artificial content restrictions relying on the pervasiveness of radio waves and failed entirely to address the pervasiveness of wire communications when simultaneously available by radio as internet wire communications are though nonexistent in 1978.

[9] *ACLU v Reno* The claim of "…*[i]nternet is "a unique and wholly new medium of worldwide human communication*", failed to address internet wire and radio communications occurring simultaneously on both old mediums and this omission was written early in the days of internet wire communications  when  few  understood  internet  wire-radio communications to be the new medium independent manner of distance communication and is perhaps more confusing to those growing up without "the Internet" or smartphones like the Justices making the *ACLU v Reno* ruling and those reading this in addition to Neeley. This error of omission becomes more plain every few years.

3.   The FCC abandoned regulation of content by internet wires despite the plain statutory mission of 47 USC §151 due the insufficient rational for decency regulation in *Pacifica* in the first severe inadvert impact of "**landmark**" court errors on decency regulation before the second "**landmark**" court error of *ACLU v Reno* prevented ALL internet decency regulation contrary to 47 USC §151.

4.   The FCC reported not regulating wire when contacted by Neeley, as is obvious. Regulation allowed for fleeting indecency by *CBS v FCC*, (06-3575) is incompatible with nude images by Neeley transmitted by wire and searches for "teri weigel" transmitting explicit pornography by wire against the mission of the FCC to protect citizen safety using interstate and world-wide **wire OR radio** communications as created to do by the Communications Act of 1934 before any simultaneous wire and radio distance communication venue existed.

5.   The progress of science and useful arts allowed the universal and overwhelming human desire for unlimited knowledge to distort law and lure humanity into preserving anonymous distance communications where responsibility for those communications was avoided counter to the Constitution and natural law.

6.   The responsibility for control of malicious and defamatory speech by law is waived by 47 USC §230 allowing unregulated speech as violates the clear right to be free from defamation and computer frauds supported by A.C.A. §§ (5-41-103, 16-60-113, 16-63-207).

16

## Prayer for Injunctive, Declaratory, Compensatory, and Punitive Relief

1.     Neeley seeks creation of an FCC nonprofit Search Engine Alternative[10]. The FCC Search Engine Alternative would not violate exclusive rights of authors to control creations after the United States becomes fully compliant statutorily with the "Berne Convention for the Protection of Literary and Artistic Works" and uses income to offset taxes and retains absolutely no user information.  Search engines are one of the simplest uses of software and are, in fact, utterly trivial usages of common knowledge.

2.     Defendant NameMedia Inc instigated this action and acted maliciously and should face no less than $1,800,000 in compensatory damages in addition to punitive awards set by a jury and funding donations to the FCC in Neeley's name.

3.     Both Defendants Google Inc and Microsoft Corporation should be ordered to cease returning nude art authored by Neeley but not allowed broadcast on daytime television in 2009 for all uses of Neeley's name as an <u>injunction</u> and as is trivial and has been trivial since the first 2009 advisement by Neeley.

---

[10] "Search Engine Alternative" is a tongue-in-cheek play on words mocking Google Inc seeking creation of "Copy[rite] Alternatives" in *Authors Guild et al v Google Inc* via class action conspiracy in order to justify serial violations of law and bypass Congress before arguing against the allowance of a class in self-serving actions as are common for Google Inc suddenly realizing author rights are individual rights.

4.     Google Inc should pay damages of $125,000 per nude image authored by Neeley that was found displayed or indexed for redisplay after advised nudes were not authorized with additional punitive amounts awarded as the jury determines to fund modernization of the FCC Wire Division[11] and offset taxes since all artists who produce nude art could have been a class had they attempted to control nude creations or other indecent creations being republished to minors.

## FCC Injunctive Relief

1.     Neeley prays that FCC be ordered to regulate ALL wire communications defined in 47 U.S.C. §153 but not regulated now in an ultimate act of hypocrisy. The FCC should be ordered to require all computers attached to common wire communications (Internet) be regulated and require mandatory self-rating of computers attached to the wire network once called "the Internet" for disguise now using the mandatory "robots exclusion protocol"(REP) described in Ex "232".

---

[11] Punitive awards should be the largest ever established by a jury. Neeley wishes these awarded to the FCC and US Treasury to offset taxes. Every user of internet wire communications on Earth was damaged. Defendant Microsoft Corporation and Defendant Google Inc have been aware of the ease of content control since each company created search interfaces yet have spent millions each year to keep US law supportive of the "holy open Internet" and authors' rights violations. Authors' rights invalidations are often called "fair-use" in the United States despite not being fair and often prohibited by the "Berne Convention for the Protection of Literary and Artistic Works" accepted by Treaty approved by Congress in 1988. This congressional decision was ruled constitutional in 2012 in *Golan v Holder*, (10-545) despite self-serving amicus opposing "Berne" public domain protections by Defendant Google Inc.

18

2.     Besides the FCC determining appropriateness ratings for content viewership (REP) and establishing fines for wire communication of indecency to minors, the FCC would establish a licensure fee protocol whereas no "snippet" of content could be republished without citing the source and paying the license fee disclosed in the (REP).  A period of 180 days would be allowed before FCC policing of wire communications would begin. See Ex "232"

3.     Search engines indexing copies of indecent content or revealing indecent content locations should now be treated by the FCC as conspiring transmitters of indecency as if the search engine had originally communicated the indecency due to gathering the indecent content and choosing to republish the indecency or index indecent content for profit. This ruling invalidating the (47 USC §230)[12] preemptions used by search engines to permit republications of indecent art and literary communications violating exclusive rights of authors and the right to be secure in the person and scores of other natural rights.

---

[12] (c) Protection for "Good Samaritan" blocking and screening of offensive material
        (1) Treatment of publisher or speaker
No provider *or user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

4.     The 47 USC §230 preemption[13] has been used counter to the intent or due to misunderstood wire-radio communications causing 47 USC §230 to violate individual rights and support trafficking in indecent communications by Defendants Google Inc and Microsoft Corporation instead of protecting ISPs from being treated as the speakers for search engines' conspiring with content creators to traffic indecent wire communications and violate privacy for decades.

5.     The FCC should be ordered to regulate wire browser distribution so that all devices capable of displaying internet wire-radio communication must be FCC "approved" or be marked so parents can exclude usage by minors. All viewing software must have a plug-in or other mechanism where the FCC "robot exclusion protocol" (REP) prevents display of any wire location not rated or rated inconsistent with the computer purchaser's settings.   Website directories rated "R" would therefore never be displayed on a computer set by the purchaser to only view "G" rated websites as has been a trivial technical process for decades but not done to promote pornography in the guise of "absolute free speech" and due the lure of the "open Internet" for humans being treated as holy in response to the fundamental human desire for knowledge whether beneficial or not.

---

[13] "No provider or user" from 47 §230(c)(1) is unconstitutional on its face allowing claims of applicability by anyone and thereby removing protection of all United States laws for privacy and decency regulation.
The words "or user" causes this section to violate the constitution by permitting violation of constitutional rights by all users of internet wire communications as was not possibly the intent of Congress.

6.    The Robot Exclusion Protocol (REP) would now rate directories of computer content attached to one end of the wire and be made mandatory by the FCC. Exclusion instructions and snippet licensing instructions would now be required and the FCC would handle "fining" for wire communications when rated inconsistent with 2010 FCC television and radio standards and provide for civil dispute resolutions for violation of the REP protocol or failures to pay for content licensing fees listed in the REP.

7.    Extra-national violations of the established FCC REP would require no search engine list the violator or acquire the same liability or fine the violator would have contrary to the unconstitutional 47 USC §230.

8.    The FCC Wire Division search engine profits would fund the FCC and pay Neeley for inciting modernization of the FCC Wire Division or helping fix "the Internet" to allow safe free speech to minors and adults.

9.    Curtis J Neeley Jr., MFA asserts this prayer contains no "windfall"[14] damages but seeks the "right thing" being done to finally establish wire-radio communications as the borderless medium independent venue safe for children and free speech including speech not the least bit acceptable for children but protected for responsible adults.

---

[14] Justifiable recovery for loss of peaceful parental relationships and loss of happiness and peace as well as recovery for the enormous legal expenditures and the costs of mitigating harms to honor and reputation would amount to billions in Neeley's opinion.

10.    Additional    punitive    awards    should    be determined by a jury and given to the US Treasury since all parents on Earth were damaged by each defendant search engine along with most religious US citizens and practicing Muslims.

## Declaratory Relief

1.    The United States Attorney General should be served with a declaration advising as follows or similar without any injunctive intent besides education.

> *"The entity often called the Internet is nothing but new uses of medium independent distance communications using both wire and radio communications simultaneously. All distant communications[15] were intended to be made safe by creation of the FCC in 1934. The rational of radio permeation of private homes uninvited was ruled one valid rational in 'Pacifica' in 1978 but was never meant to be the only rational for distance communications regulation by the FCC and was never called **exclusive** by any court."*

---

[15] 47 U.S.C. §151.  For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, **Nation-wide, and world-wide wire and radio communication service** with adequate facilities at reasonable charges, for the purpose of the national defense, **for the purpose of promoting safety of life and property through the use of wire and radio communications**, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

22

2.    The United States Attorney General should be served with a declaration advising as follows in order to begin repairing over two centuries of legal errors made apparent by the distance communications cultural sea-change caused by simultaneous internet wire and radio communications. The [sic] "Internet" is simply a *"unique and wholly new [MANNER]"*[16] of using one of the oldest mediums for immediate distant communications by wire while using home permeating radio waves at the same time. The United States Attorney General should be served with a declaration advising as follows or similar without any injunctive intent in order to educate.

> *"Article I, §8, Clause 8 of the Constitution authorizes Congress to create laws protecting the exclusive right of authors for a limited time for creations but were left unprotected for the subsequent two centuries and two decades. Author and inventor individual rights must now be protected in full compliance with the "Berne Convention for the Protection of Literary and Artistic Works" as alleged done by Treaty to promote creation and disclosure of useful science and art as stated in the Constitution in 1787 but not done except by Title 17 rituals recognizing no rights whatsoever despite the Constitution."*

---

[16] In this quote from the 1996 *ACLU v Reno* decision *"medium"* was the term used in clear error rather than manner of medium independent simultaneous wire and radio communications.

3.      The United States Attorney General should be served with a declaration advising as follows or similar without injunctive intent except to educate.

> *"47 USC 230 intended to protect 'internet service providers'(ISPs) from being treated as the speakers of indecent or defamatory content just as telephone companies are protected from the indecent telephone calls they may deliver unknowingly. Search engines are, in fact, original speakers who choose what content to aggregate. This aggregation was done in the past for free but now the REP should allow for licensure of snippets and trafficking of chosen snippets for profit.   Numerous courts have interpreted this statute counter to the original intent whereby search engines cite this error as preempting liabilities for communication of harvested indecency and defamatory content as well as stolen snippets. Removal of "and user" may render the Statute as intended. Congress should now decide how to revise this to be constitutional and not invalidate the Rule of Laws       while       modernizing       distance communications."*

4.      The United States Attorney General should be served with a declaration advising as follows or similar without any injunctive intent besides education.

24

*Search engines have operated for decades in the United States and profited on human rights violations that are so exclusively profitable in the United States that almost no inappropriately profitable foreign search engines exist. This fact is prima facia evidence of the errors in United States law. Development of search engines fully compliant with the "Berne Convention" was not necessary in the United States due the unconstitutional failure to protect exclusive rights of individual authors after authorized in 1787 but never addressed except marginally in 1988 but still not enforced by any United States laws and particularly not by US Title 17.*

5.     These declarations are meant to educate and instruct regarding the overwhelming speed of communications development and not require any response whatsoever though motivating many due to educating lawmakers and the general public.

## PRAYER

Curtis J Neeley Jr., MFA prays the right thing be done and thereby end the scourge of liability free nude art and pornography display to minors and liability free consumption on the utterly unregulated simultaneous wire-radio communications venue called "the Internet". "The Internet" now supports liability-free defamation, indecency presentation, and liability-free indecency consumption as well as the liability-free serial violations of exclusive author rights.

25

## PRAYER (cont)

Exclusive rights of authors have never been protected in the United States contrary to the Constitution and the FCC stopped performing the duties listed in the Communications Act of 1934 when the wire-radio venue developed. Prohibiting minors from accessing indecent adult wire and radio communications has been trivial for decades but not done to support windfall profitability of liability-free indecent wire communications by search engines et al while supported by pornography addicts and casual repeat consumers[17] of responsibility-free uses of indecent communications including nearly half of the users of internet wire and radio communications today. Adult communications will continue via "the Internet" but Neeley prays these should no longer be permitted for the anonymous for indecent communications. The identity requirement is supported even for controversial subjects by *Doe v. Reed*, (09-559) when legitimate state interests are served. The protection of minors from exposure to indecent wire or radio communications is a legitimate state interest ignored now for decades. *See* Ex. 232.

Respectfully Submitted,
s/ Curtis J Neeley Jr.
Curtis J Neeley Jr., MFA

---

[17] According to comScore Media Metrix, 71.9 million people visited adult sites in August 2005, reaching 42.7 percent of the Internet audience. Sixty-percent of all website visits are sexual in nature. (MSNBC Survey 2000)

26